# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Whitebox Holdings LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Jeffrey Parket and Robyn Parket,<br><br>　　　　　Defendants. | Civil File No. 0:21-cv-02776-WMW-DTS<br><br>**WHITEBOX HOLDINGS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS JEFFREY PARKET AND ROBYN PARKET** |

## INTRODUCTION

Plaintiff Whitebox Holdings, LLC ("Plaintiff") respectfully submits this memorandum of law in support of its Motion for Entry of Default Judgment against Defendants Jeffrey Parket and Robyn Parket (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2).

Default of both Defendants has been entered by the Clerk of the Court. (Doc. Nos. 10 & 20) By their default, Defendants have admitted all well-pleaded factual allegations in the Complaint. (Doc. No. 1) Plaintiff's allegations fully support liability in Defendants for fraud and breach of contract.

Accordingly, Plaintiff seeks entry of default judgment in the form of money damages ($4,000,000 + interest); an Order of the Court that the loan collateral

be frozen pending payment of the judgment; and the contractual costs of collection proved herein.

## SUMMARY OF FACTUAL ALLEGATIONS

Defendants Jeffrey Parket and Robyn Parket sought to obtain a loan from Plaintiff in the amount of $4 million. (Complt. ¶ 7) In their attempt to obtain the loan, Defendants made written statements about the Defendants' financial condition. (Complt. ¶ 8) The written statements they submitted to Plaintiff were materially false. (Complt. ¶ 9) Plaintiff relied upon the materially false written statements by Defendants regarding their financial condition in deciding to enter into the Loan Agreement providing for the $4 million loan. (Complt. ¶ 10) Defendants knew that Plaintiff would rely on the false written statements in deciding to enter into the Loan Agreement. (Complt. ¶ 11) Defendants caused the materially false written statements to be made with the intent to deceive Plaintiff into granting the loan. (Complt. ¶ 12) As a result of Defendants' fraudulent acts, Plaintiff entered into a loan for $4 million to Defendants that it would not have otherwise agreed to. (Complt. ¶ 36) On November 12, 2021, both Defendants individually executed the Credit Agreement, Term Note, and Security Agreement that constitute the Loan Documents. (Complt. ¶¶ 25-26)

On December 23, 2021, Jeffrey Parket's attorney contacted Andrew J. Redleaf, who executed the Loan Documents on behalf of Plaintiff, to inform him

that Jeffrey Parket had lied about his financial condition, that he had $40 million in undisclosed debt, and that he had no assets; thus, Defendants defaulted on the loan and the financial statements regarding Defendants' financial condition were false. (Complt. ¶ 38) On December 26, 2021, Jeffrey Parket left a voicemail message for Andrew Redleaf stating, "I have no excuses. Obviously, I did terrible things. . . I understand all the things that I did that were wrong." (Complt. ¶ 39) On December 26, 2021, Jeffrey Parket had a phone conversation with Andrew Redleaf confirming the fabrication of the written documents regarding Defendants' financial condition; Jeffrey Parket also confirmed that Robyn Parket personally executed the Loan Documents. (Complt. ¶ 40) Defendant Jeffrey Parket's attorney confirmed during a telephone call on December 28, 2021, that "my client committed a fraud. I don't deny that and my client will not deny that." (Complt. ¶ 41) Defendant Jeffrey Parket's attorney similarly confirmed during a telephone call on December 28, 2021 that the financial statements presented by Defendants during the loan application process were materially false. (Complt. ¶ 42) On December 30, 2021, Jeffrey Parket left a voicemail message for Andrew Redleaf stating "I did horrible things to you. I lied to you. I cannot make any excuses for anything I've done." (Complt. ¶ 43)

## ARGUMENT

**I.   The Applicable Procedure.**

Federal Rule of Civil Procedure 55 sets out a two-step procedure for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default.  Fed. R. Civ. P. 55(a); *see also Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003).  Second, upon request of the plaintiff and an affidavit regarding the amount due, Rule 55(b) authorizes the clerk or the Court to enter against the defendant a default judgment for the amount claimed and costs.  Fed. R. Civ. P. 55(b)(2); *see also Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) ("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).").

A party that is entitled to a default judgment must prove its damages to a reasonable degree of certainty.  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001).  A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly.  *Pope v. United States*, 323 U.S. 1, 12 (1944).

Under Rule 55(b)(2), the Court has discretion whether to order a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

The Clerk of the Court has entered default against both Defendants. (Doc. Nos. 10 & 20)

## II. Plaintiff is Entitled to Default Judgment on Both Claims.

A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). Plaintiff has pleaded the factual elements of Plaintiff's fraud and breach of contract claims. Plaintiff is therefore entitled to default judgment on these claims.

### A. Fraud.

To prove a fraud claim under Minnesota law, a party must show that: (1) the defendant made a false representation "of a past or existing material fact susceptible of knowledge"; (2) the representation was "made with knowledge of the falsity of the representation or made without knowing whether it was true or false"; (3) the defendant made the representation with the intent to induce the plaintiff to act in reliance on it; (4) the representation caused the plaintiff to act in reliance on it; and (5) the plaintiff "suffered pecuniary damages as a result of

5

the reliance." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009).

### 1. Plaintiff alleges false representations of fact.

Plaintiff alleges, with specificity as to date, place, and content of the representations, that Defendants provided the following false representations of fact to Plaintiff: (1) Defendants' Equity Trust Company Quarterly Statement falsely listing a ROTH IRA value of $18,100,893.70 (Complt. ¶ 14); (2) Defendants' JP Morgan Chase Bank, NA "Savings Summary" falsely indicating a value for DCPS SV LLC of $7,216,541.71 (Complt. ¶ 16); (3) Defendants' JP Morgan Chase Bank, NA "Savings Summary" falsely indicating a value for DCPS SV II LLC of $4,761,364.07 (Complt. ¶ 18); (4) a false Agreement dated November 12, 2021 with Downtown Capital Partners, LLC ("DCP") executed by Jeffrey Parket and Gary Katz of DCP agreeing to put a "freeze" on any withdrawals or distributions from the DCPS SV LLC or DCPS SV II LLC (Complt. ¶ 20); (5) a Personal Financial Statement for Jeffrey Parket dated October 1, 2021 falsely listing assets of $27,550,000 and liabilities of approximately $500,000 (Complt. ¶ 22); (6) Schedule 9.4 to the Credit Agreement signed by both Defendants that falsely listed "Investments" by Defendants that exceed $23 million (Complt. ¶ 28); and (7) Defendants' false representation in Article 7.5 of the Credit Agreement signed by both Defendants

that any financial statement furnished to Plaintiff by Defendants fairly presented the financial condition of Defendants as at the dates of such statements (Complt. ¶ 30). Plaintiff's allegations of Defendants' false representations of fact are deemed admitted. *Murray*, 595 F.3d at 871.

### 2. Plaintiff alleges knowledge of Defendants that their representations were false.

Plaintiff alleges that Defendants have admitted that their representations to Plaintiff were false. The allegations of Defendants' admissions are themselves admitted. *Murray*, *id.*

As noted above, approximately six weeks after the loan agreements were executed, Defendant Jeffrey Parket's attorney advised Plaintiff (through Andrew Redleaf) that Jeffrey Parket had lied about his financial condition; that he had $40 million in undisclosed debt; and that he had no assets. (Complt. ¶ 38) Defendants' admission as to the falsity of the financial statements submitted by Defendants is admitted. Shortly thereafter, Jeffrey Parket stated to Plaintiff (through Redleaf), "I have no excuses. Obviously, I did terrible things. . . I understand all the things that I did that were wrong." (Complt. ¶ 39) Jeffrey Parket also confirmed to Plaintiff that the written documents regarding Defendants' financial condition were fabricated and that Robyn Parket had personally executed the Agreement. (Complt. ¶ 40) Jeffrey Parket's attorney confirmed during a telephone call that "my client committed a fraud. I don't

deny that and my client will not deny that." (Complt. ¶ 41) Jeffrey Parket's attorney similarly confirmed during a telephone call that the financial statements presented by Defendants during the loan application process were materially false. (Complt. ¶ 42) On December 30, 2021, Jeffrey Parket left a voicemail message for Andrew Redleaf stating, "I did horrible things to you. I lied to you. I cannot make any excuses for anything I've done." (Complt. ¶ 43) These admissions are admitted, and include the admission that the Defendants knowingly made false representations of fact to Plaintiff. *Murray, id.*

> **3. Plaintiff alleges Defendants made the false representations with the intent to induce the plaintiff to act in reliance on them.**

Plaintiff has alleged that Defendants made false material representations of fact to Plaintiff intending to deceive Plaintiff and knowing that Plaintiff would rely on the false representations in entering into the Loan Agreement. (Complt. ¶¶ 10-12) Plaintiff further alleged that Defendants caused the materially false statements to be made with the intent to deceive Plaintiff into granting the loan. (Complt. ¶ 37) These allegations are admitted. *Murray, id.*

### 4. Plaintiff alleges that Defendants' false representations caused Plaintiff to act in reliance on them.

Plaintiff alleges that it relied on the false statements by Defendants regarding their financial condition in deciding to enter into the Loan Agreement. (Complt. ¶¶ 10, 35-36, 53)  These allegations are admitted.  *Murray*, *id.*

### 5. Plaintiff alleges that it has suffered pecuniary damages as a result of its reliance on Defendants' false representations.

Plaintiff alleges it was damaged as a result of its reliance on Defendant' false representations by entering into the Loan Agreement for $4,000,000. (Complt. ¶¶ 10, 35-36, 53-54, 59)  These allegations are admitted.  *Murray*, *id.*

## B. Breach of Contract.

The parties chose Minnesota law to govern the Loan Documents. (Complt. ¶ 3)  The elements of a breach of contract claim under Minnesota law are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant."  *Lyon Fin. Servs. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)).

Plaintiff has alleged the formation of a contract through the execution by all parties of the Credit Agreement, Term Note, and Security Agreement that

constitute the Loan Documents. (Complt. ¶¶ 3, 25-26, 38, 40, 56) Plaintiff alleged specific provisions of the Loan Documents in the Complaint at ¶¶ 3, 27, 28, 30, 32, and 58. These allegations are admitted. *Murray*, *id.*

Plaintiff alleges at ¶ 57 of the Complaint that Plaintiff performed all of its obligations under the November 12, 2021 contract.

Plaintiff alleges that Defendants breached the November 12, 2021 contract by informing Plaintiff that it would not repay the loan. (Complt. ¶ 58)

Plaintiff alleges that Defendants breached Article 7.5 of the Credit Agreement, which represents and warrants that the financial statements of the Defendants "fairly present the financial condition of the [Defendants] as at the dates specified therein," including by means of the false list of "Investments" set forth in Schedule 9.4 to the Credit Agreement. (Complt. ¶¶ 30-31, 58)

Plaintiff alleges that Defendants breached Article 8.8 of the Credit Agreement, in which Defendants covenanted that they would keep "adequate and proper records and books of account in which full and correct entries" would be made of Defendants' "financial dealings, business and affairs." (Complt. ¶¶ 32-33)

Plaintiff alleges that Defendants breached Section 8.13 of the Credit Agreement by failing to promptly provide written notice to Plaintiff of its

"Default or Event of Default" as required, including without limitation the Event of Default defined in Section 10.1(b) of the Credit Agreement. (Complt. ¶ 58)

Plaintiff alleges that Defendants breached Section 9.1 of the Credit Agreement by failing to protect the Collateral. (Complt. ¶ 58)

Plaintiff alleges that Defendants breached the Loan Agreement by failing to pay the balance on the Term Note and the accrued interest after the Event of Default by Plaintiff. (Complt. ¶ 58)

Plaintiff alleges that Defendants breached Section 10.2 by failing to make the Collateral available to Plaintiff. (Complt. ¶ 58)

Plaintiff alleges damages caused by Defendants' breach of the Loan Documents in the amount of $4,000,000 plus accrued interest. (Complt. ¶ 59)

These allegations are admitted. *Murray*, *id.*

### III. Plaintiff's Damages are Proved in the Documents Submitted to the Court.

Plaintiff seeks judgment of money damages consisting of three items: (a) $4,000,000 for the principal amount of the loan; (2) accrued interest; and (3) collection costs, including attorneys' fees.

Section 10.1(b) of the Credit Agreement provides that an Event of Default occurs when a representation or warranty made by a Defendant in the Loan Documents "shall prove to have been false or misleading in any material respect." Credit Agreement, attached to the Declaration of Andrew J. Redleaf

("Redleaf Dec."), filed herewith, as Exhibit 1. The remedy for an Event of Default in the Credit Agreement and under the Term Note is that the outstanding unpaid principal balance of the Term Note and all accrued and unpaid interest immediately become due and payable. Credit Agreement § 10.2(b), Redleaf Dec. Ex. 1; Term Note, Redleaf Dec. Ex. 2.

### A. The Outstanding Balance of the Loan is $4,000,000.

The outstanding principal balance of $4,000,000 is a sum certain, stated at § 2.1 of the Credit Agreement and in the Term Note. Redleaf Dec. Exs. 1 & 2. That is the amount Plaintiff caused its bank to disburse to Defendants on November 12, 2021. Redleaf Dec. ¶ 5. The entire amount of the loan was disbursed to Defendants, and no amount has been paid back and no amount has been paid in interest. *Id.* The Loan Documents are sufficient documentation of the amount of the loan. *Pope,* 323 U.S. at 12; *Taylor v. Ballwin,* 859 F.2d 1330, 1333 (8th Cir. 1988) (no hearing is necessary where "the findings and judgment regarding damages . . . are capable of being computed on the basis of facts of record").

### B. Accrued interest through the date of this Motion is $501,110.48.

The amount of interest owed is susceptible of calculation from the Loan Documents. The Term Note provides, "Commencing on December 31, 2021, and continuing on the last day of each month during the term of this Note, Borrower

12

shall pay to Lender an amount equal to the interest then accrued and unpaid on the principal balance of this Note computed at the Term Interest Rate." Redleaf Dec. Ex. 2. Accordingly, interest from November 12, 2021 through December 31, 2021 was due on December 31, 2021, and each succeeding month's interest was due on the the last day of each succeeding month.

The rate of of interest is 22 percent per annum. Credit Agreement § 1.1, Redleaf Dec. Ex. 1. The Term Interest Rate is defined as follows:

> The annual rate of interest equal to TWELVE PERCENT per annum (12.00%). Notwithstanding the foregoing, from and after the occurrence of any Default or Event of Default and continuing thereafter until such Default or Event of Default shall be remedied to the written satisfaction of the Lender, the Term Interest Rate shall, at the election of the Lender, be the lesser of (a) the rate of interest that would otherwise be then in effect *plus 10.0%*, or (b) the maximum rate of interest permitted to be charged under applicable law.

*Id.* (emphasis added). The loan was made at 12 percent. As a result of the Event of Default occurring simultaneously with the origin of the loan, however, Term Interest is "the lesser of (a) the rate of interest that would otherwise be then in effect plus 10.0%, or (b) the maximum rate of interest permitted to be charged under applicable law." Pursuant to Minn. Stat. § 334.01, subd. 2, there is no upward limit on interest on a loan for more than $100,000. The lesser rate is therefore the rate "that would otherwise be then in effect," i.e., 12 percent, "plus 10.0%," for a total of 22 percent.

One year's interest at 22 percent would be $880,000, which divided by 12 is $73,333.33, which divided by 30 is $2,444.44 per day. (*See* Term Note, Redleaf Dec. Ex. 2 (interest calculated on basis of "360 day year"; this means 12 months of 30 days each). Interest for 18 days in November 2021 is $43,999.42 ($2,444.44 x 18 days). Interest for December 2021 through May 2022 is $439,999.98 ($73,333.33 x 6 mos.). Interest for June 1, 2022-June 7, 2022 is $17,111.08 ($2,444.44/day x 7 days). These amounts add up to $501,110.48 through the date of the filing of this motion. Plaintiff requests the Court to add additional amounts for subsequent months and days through the entry of judgment.

The accrued interest is sufficiently documented and is proved to a reasonable certainty. *Pope,* 323 U.S. at 12; *Taylor,* 859 F.2d at 1333; *Everyday Learning*, 242 F.3d at 819.

### C. Attorneys' Fees and Costs.

Section 11.2 of the Credit Agreement provides, "The Borrower agrees to reimburse the Lender upon demand for all expenses paid or incurred by the Lender (including reasonable fees and expenses of legal counsel) in connection with this Agreement and the other Loan Documents and any amendments thereto, and/or in connection with any collection and enforcement of the Loan Documents." Redleaf Dec. Ex. 1. The term Note provides, "The Borrower agrees

14

to pay all costs of collection, including reasonable attorneys' fees, in the event this Note is not paid when due." Redleaf Dec. Ex. 2. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.*

An award of reasonable attorneys' fees and costs in the amount of $61,972.60 is proper here. The requested amount of attorneys' fees, $61,072.60, is based on 111.55 hours of legal services charged at hourly rates of $450 per hour and $750 per hour. These rates are reasonable and comparable to the rates charged by law firms of similar size and stature in the Minneapolis legal market for attorneys with similar levels of experience. Declaration of Kirk O. Kolbo ("Kolbo Dec."), ¶¶ 8-9. Mr. Kolbo's services were billed for $900.00. *Id.* at ¶ 10. Collection costs, i.e., attorneys' fees and costs, are proved to a reasonable certainty. *Everyday Learning*, 242 F.3d at 819.

Plaintiff also seeks an injunction protecting the Collateral. In its Complaint, Plaintiff asks for "A Temporary Restraining Order and Preliminary Injunction freezing the Collateral as defined in the Agreement and any other assets of Defendants from being accessed, sold, or transferred by Defendants until resolution of this case," and "An Order requiring Defendants to turn over

15

the Collateral as defined in the Agreement to Plaintiff." (Complt., Prayer ¶¶ a, c. The Credit Agreement requires Defendants to conserve the Collateral and in the Event of Default to make the Collateral available to Plaintiff. (Complt. ¶¶ 4.6, 9.1, 10.2)

Injunctive relief may be granted if the Court finds that (i) the plaintiff will suffer irreparable harm in the absence of such relief, (ii) the harm the plaintiff would suffer is greater than any harm the injunctive relief may impose on the defendant, (iii) the plaintiff will likely succeed on the merits, and (iv) the public interest favors granting such relief. *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981).

Here, Plaintiff will suffer irreparable harm if the security for which Plaintiff contracted in lending Defendants $4,000,000 is dissipated to meet competing obligations. Defendants will not be harmed by complying with their bargained-for contractual obligations. The public interest will be well served by enforcing Defendants' contractual obligations. *See Gen. Mills, Inc. v. Goldman*, 184 F.2d 359, 366 (8th Cir. 1950) ("[T]he highest public policy is found in the enforcement of the contract as it was actually made."); *see also Radisson Hotels Int'l, Inc. v. Fairmont Partners LLC,* No. 19-cv-1176, 2020 U.S. Dist. LEXIS 22593, at *12 (D. Minn. Feb. 10, 2020) (injunctive relief proper to hold defendant to contractual post-termination obligations). Because injunctive

relief is proper so as to hold Defendants to their contractual post-Event of Default obligations, an injunction should be granted prohibiting Defendants from in any way impairing or alienating the Collateral and directing Defendants to comply with their post-Event of Default obligations.

IV. **No Hearing is Necessary for the Court to Enter Judgment for the Requested Relief.**

The Court has discretion under Rule 55(b)(2) whether to order a hearing on Plaintiff's motion in order to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

No hearing is necessary. The well-pleaded, uncontradicted facts alleged in the Complaint suffice to establish both Defendants' liability for Plaintiff's fraud and breach of contract claims and the propriety of the relief sought by Plaintiff. The items of damages sought are susceptible to ready computation, and the contractual collection fees, including attorneys' fees, are such as the Court commonly reviews without a hearing. Accordingly, no hearing is necessary for the Court to enter default judgment in the form and in the amount requested by Plaintiff. *See Taylor,* 859 F.2d at 1333 (no hearing necessary where "the findings and judgment regarding damages . . . are capable of being computed on the basis of facts of record").

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2) should be granted.

Dated: June 7, 2022 **BRIOL & BENSON, PLLC**

By: /s/ Mark J. Briol_____
Mark J. Briol (MN #0126731)
Darren B. Schwiebert (MN #0260642)
3700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 756-7777
mark@briollaw.com
darren@briollaw.com

*Attorneys for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2022, I filed the foregoing WHITEBOX HOLDINGS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS JEFFREY AND ROBYN PARKET through the Court's CM/ECF system. I also served notice by US Mail of the filing on the following *parties:*

Robyn Parket
109 Siesta Way
Palm Beach Gardens, FL 33418
*Defendant*

Robyn Parket
200 East 65th Street, Apt 45N
New York, New York 10065
*Defendant*

Jeffrey Parket
200 East 6th Street, Suite 43S
New York, NY 10003
*Defendant*

                                                          */s/ Darren B. Schwiebert*
                                                          Darren B. Schwiebert
                                                          *Attorney for the Plaintiff*