UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Whitebox Holdings LLC, | Case No. 21-cv-2776 (WMW/DTS) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Jeffrey Parket and Robyn Parket, | |
| Defendants. | |

---

Before the Court is Plaintiff's motion for entry of default judgment and injunctive relief against Defendants. (Dkt. 22.) Defendants have not appeared in the case and, therefore, do not oppose the motion. For the reasons addressed below, the Court grants in part and denies in part Plaintiff's motion for entry of default judgment.

## BACKGROUND

Plaintiff Whitebox Holdings LLC (Whitebox) is a Delaware corporation with its principal place of business in Minnesota. Defendants Jeffrey Parket and Robyn Parket are citizens of New York (collectively, the Parkets).

Whitebox alleges that the Parkets, in an attempt to secure a $4,000,000 loan from Whitebox, made materially false statements and provided Whitebox with materially false documents. These false documents include an Equity Trust Company quarterly statement listing a ROTH IRA valued at $18,100,893.70, JP Morgan Chase Bank, NA savings summaries for two separate businesses indicating balances of $7,216,541.71 and

$4,761,364.07, respectively and a personal financial statement for Jeffrey Parket listing his assets as $27,550,000 and his liabilities as approximately $500,000.

The Parkets also made misrepresentations in documents they signed as part of the loan transaction with Whitebox, including the Security Agreement, the Term Note, and the Credit Agreement. Section 7.1 of the Credit Agreement provides that "[e]ach [of the Parkets] is an individual resident of the State of New York, and has all required consents and approvals required to permit [the Parkets] to enter into the Loan Documents and to perform his or her obligations under the Loan Documents." And schedule 9.4 of the Credit Agreement lists the Parkets' investments as exceeding $23,000,000. Pursuant to Article 7.5 of the Credit Agreement, the Parkets represented and warranted that the financial statements that the Parkets furnished to Whitebox "fairly present the financial condition of [the Parkets] as at the dates specified therein." And pursuant to Article 8.8 of the Credit Agreement, the Parkets expressly agreed to "[k]eep adequate and proper records and books of account in which full and correct entries will be made of [the Parkets'] financial dealings, business and affairs." Whitebox alleges that, in executing these agreements, the Parkets made materially false representations and warranties, on which Whitebox relied in deciding to enter into a loan agreement providing a $4,000,000 loan to the Parkets. Whitebox alleges that it would not have extended this loan to the Parkets but for the Parkets' fraudulent acts.

On December 25, 2021, Jeffrey Parket's attorney contacted Andrew Redleaf—the president and sole member of Whitebox—who had executed the loan documents on Whitebox's behalf. Jeffrey Parket's attorney informed Redleaf that Jeffrey Parket had lied about his financial condition, had $40,000,000 in undisclosed debt and had no assets. The

Parkets then defaulted on their loan from Whitebox. The next day, Jeffrey Parket left Redleaf a voicemail stating "I have no excuses. Obviously, I did terrible things . . . I understand all the things that I did that were wrong." That same day, Jeffrey Parket also spoke with Redleaf on the phone, confirming that the documentation of the Parkets' financial condition that the Parkets had given to Whitebox had been fabricated and that Robyn Parket had personally executed the loan agreement documents. On December 28, 2021, Jeffrey Parket's attorney confirmed that the financial statements the Parkets supplied during the loan application process were materially false and stated "my client committed a fraud. I don't deny that and my client will not deny that." On December 30, 2021, Jeffrey Parket left Redleaf a voicemail stating "I did horrible things to you. I lied to you. I cannot make any excuses for anything I've done."

On December 31, 2021, Whitebox commenced this lawsuit. Count I of the complaint alleges fraud. Count II of the complaint alleges negligent representation. Count III of the complaint alleges breach of contract. Upon Whitebox's application, the Clerk of Court entered default against Robyn Parket on March 31, 2022, and against Jeffrey Parket on June 7, 2022. Whitebox now moves for default judgment and injunctive relief.

## ANALYSIS

To obtain a default judgment, a party must follow two steps. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Whitebox sought entry of default against

3

the Parkets, which the Clerk of Court entered against Robyn Parket and Jeffrey Parket, respectively, on March 31, 2022, and June 7, 2022. The entries of default are supported by the record, which reflects that the Parkets were properly served with the complaint and summonses and failed to answer or otherwise respond to Whitebox's complaint.

## I.     Allegations

After default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). But "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). The Court addresses the factual basis of each count Whitebox advances in its complaint.

### A.     Fraud (Count I)

To establish common-law fraud under Minnesota law, a plaintiff must prove:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011). Fraud may also be established by concealment of the truth. *Est. of Jones v. Kvamme*,

4

449 N.W.2d 428, 431 (Minn. 1989).  Because the Clerk of Court entered default against the Parkets, the Court must take as true the allegations in Whitebox's complaint.  *See* Fed. R. Civ. P. 8(b)(6).  Whitebox alleges that the Parkets misrepresented their finances through various falsified documents and other representations, including misrepresentations in a quarterly statement, savings summaries, personal financial statements and in the agreements that the Parkets signed as part of the loan transaction with Whitebox.  Whitebox alleges that the Parkets made these false representations with knowledge of their falsity and that the Parkets intended to secure a loan from Whitebox as a result of Whitebox's reliance on the false representations.  In support of these allegations, Whitebox relies on the falsity of the documents, Jeffrey Parket's admissions regarding the falsity of the financial statements he provided and Jeffrey Parket's attorney's statements to Redleaf confirming that the Parkets had lied to Whitebox.  Whitebox alleges that it relied on the Parkets' false representations in extending the Parkets the $4,000,000 loan and that Whitebox has suffered damages resulting from the Parkets' default.  Taking Whitebox's allegations as true, the Court concludes that Whitebox has established that the Parkets defrauded Whitebox and grants default judgment on Whitebox's fraud claim.

### B. Breach of Contract (Count III)

Whitebox's complaint alleges breach of contract.  In order to state a claim for breach of contract under Minnesota law, a plaintiff must show: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant."  *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).  Because the Clerk of Court entered

5

default against the Parkets, the Court must take as true the allegations in Whitebox's complaint. *See* Fed. R. Civ. P. 8(b)(6). Whitebox alleges that, on November 12, 2021, Whitebox and the Parkets entered into several agreements that formed part of a single loan transaction whereby Whitebox loaned the Parkets $4,000,000. Whitebox alleges that the Parkets breached several terms of the loan documents. Among these terms, Whitebox alleges that the Parkets failed to repay the loan, falsely represented that the financial statements that the Parkets provided to Whitebox were representative of the Parkets' financial condition at the time of the transaction and failed to maintain a proper record of their financial condition. Whitebox also alleges that the Parkets defaulted on the loan. Accepting Whitebox's allegations as true, the Court concludes that Whitebox has established that the Parkets breached their contract with Whitebox. Accordingly, the Court grants default judgment on Whitebox's breach-of-contract claim.

        **C.**     **Negligent Representation (Count II)**

Whitebox's complaint alleges negligent representation. In Whitebox's motion for default judgment, Whitebox neither addresses this count nor expressly moves for default judgment. Because Whitebox does not move for default judgment as to the negligent misrepresentation claim, the Court does not grant default as to Count II.

**II.**     **Damages**

Whitebox requests that the Court enter default judgment and award damages in its favor. A district court must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) ("[A] default judgment cannot be entered until the amount of damages has

6

been ascertained." (internal quotation marks omitted)). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

### A. Actual Damages

Whitebox requests damages equal to the $4,000,000 loan amount plus interest owed on that loan. Redleaf attests that, on November 12, 2021, he caused Park State Bank to disburse $4,000,000 from Whitebox's account to the Parkets. In his declaration in support of Whitebox's motion for default judgment, Redleaf attests that neither Jeffrey Parket nor Robyn Parket has paid Whitebox for any of the principal or interest owed on the loan. In support of his declaration, Redleaf appends a copy of the executed Credit Agreement, Term Note and Security Agreement. Based on this evidence, Whitebox has established damages to a reasonable degree of certainty. Accordingly, Whitebox is entitled to $4,000,000, the amount Whitebox loaned the Parkets.

Whitebox also seeks interest owed on the loan. Under the terms of the Credit Agreement, the loan was subject to an "annual rate of interest equal to TWELVE PERCENT per annum (12.00%)." In the event of default, however, the Credit Agreement provided that the interest would be subject to the lesser of (a) an additional 10 percent interest rate or (b) the maximum rate of interest permitted to be charged under applicable law. Minnesota law provides no upward limit on interest on a loan that exceeds $100,000. Minn. Stat. § 334.01, subdiv. 2. The lesser interest rate is, therefore, the existing 12-percent

interest rate plus an additional 10-percent interest rate, for a total interest rate of 22 percent. One year of interest at a 22-percent rate on a $4,000,000 loan is $880,000. The Term Note calculates the interest based on a 360-day year. The interest rate is, therefore, $2,444.44 per day. Whitebox alleges that the Parkets defaulted on November 12, 2021. Whitebox filed its motion for default judgment on June 7, 2022. Based on the 30-day month assumption that underlies the 360-day year term in the Term Agreement, 205 days elapsed between the date of alleged default and the date on which Whitebox filed the motion for default judgment. To calculate the total interest owed, the Court multiplies the daily interest rate of $2,444.44 by the 205 days that elapsed, which results in $501,111.11. The Court, therefore, awards $501,111.11 in interest, plus any additional interest that accrues before the Court orders entry of judgment.

### B. Attorneys' Fees and Costs

Whitebox also seeks attorneys' fees and costs in the amount of $61,072.60. Whitebox contends that it incurred these attorneys' fees and costs while responding to the Parkets' default, communicating with various interested parties and litigating this matter. Attorneys' fees are expressly permitted under Section 11.2 of the Credit Agreement.

Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.* The United States Court of Appeals for the Eighth Circuit applies the lodestar method to calculate a reasonable attorneys' fee. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996).

Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award bears the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Exhibit 1 to the Declaration of Mark J. Briol sets forth in detail the attorneys' billing records and the calculations underlying the $61,072.60 in attorneys' fees and costs that Whitebox seeks. Whitebox's request for attorneys' fees and costs is based on 111.55 hours of legal services charged at hourly rates between $450 and $750, as well as costs. These rates are reasonable and comparable to the rates charged by law firms of similar size and stature in the Minneapolis legal market for attorneys with similar levels of experience.

But, using the hours that Whitebox maintains each attorney worked, the attorneys' hourly rates and the costs counsel incurred in furtherance of this case, the total amount of fees and costs does not equal the $61,072.60 sum Whitebox requests from the Court. If Mark J. Briol worked 36.25 hours on this matter at an hourly rate of $750 per hour, as Briol represents in his declaration, his total fee would be $25,187.50. If Darren B. Schwiebert worked 51.6 hours on this matter at an hourly rate of $450, as Briol represents in his

9

declaration, Schwiebert's total fee would be $23,220.  If William G. Carpenter worked 23.7 hours on this matter at an hourly rate of $450, as Briol represents in his declaration, Carpenter's total fee would be $10,665.  Adding these three attorneys' fees together yields a total of $59,072.50 in attorneys' fees.  The only costs that the Court can identify that counsel expended in this litigation are a $402 filing fee for commencing this lawsuit and a $900 payment to Kirk O. Kolbo for his declaration in support of Whitebox's request for attorneys' fees.  The sum of the attorneys' fees, the filing fee and the payment to Kolbo results in a total of $60,374.50, an amount that is over $1,000 less than the amount Whitebox requests in attorneys' fees and costs.  In addition, Whitebox neither identifies a legitimate need for Kolbo's declaration nor explains that Whitebox included Kolbo's fee in the attorneys' fees and costs calculation.  The Court, therefore, excludes Kolbo's fee from the attorneys' fees and costs sum.  Adding together the attorneys' fees figure of $59,072.50 and the filing fee cost of $402 results in a total of $59,474.50.  This figure represents the fees for the hours that Briol attests Whitebox's attorneys worked on this matter as well as the $402 filing fee Whitebox paid to commence this lawsuit.

The Court determines that attorneys' fees and costs in the amount of $59,474.50 are reasonable and awards Whitebox this amount pursuant Section 11.2 of the Credit Agreement and the applicable law.

### III.     Request to Freeze Loan Collateral Pending Payment of Judgment

Whitebox requests that the Court enter an injunction prohibiting the Parkets from impairing or alienating the loan collateral and directing the Parkets to comply with their

post-default obligations. Whitebox does not specify whether it seeks a preliminary or a permanent injunction. The Court addresses both forms of injunctive relief.

When determining whether a preliminary injunction is warranted, a district court considers four factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that the injunction will inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "While the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied, a finding of a likelihood of success on the merits only justifies preliminary relief if there is a risk of irreparable harm and the balance of the factors support an injunction." *CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009). The burden to establish the propriety of injunctive relief rests with the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because a preliminary injunction exists to preserve the status quo until trial, it is not an appropriate remedy when a court enters default judgment in a case. For this reason, the Court denies Whitebox's request for injunction in so far as it is a request for a preliminary injunction.

Alternatively, Whitebox may be seeking permanent injunctive relief. A plaintiff must satisfy a four-factor test before a court may grant permanent injunctive relief by establishing that (1) the plaintiff has suffered irreparable injury, (2) legal remedies, such as money damages, are inadequate, (3) an equitable remedy is warranted in light of the

balance of hardships between the parties and (4) a permanent injunction would not disserve the public interest. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity." *eBay*, 547 U.S. at 394. Here, Whitebox has requested, and the Court grants, monetary damages. But Whitebox has not adequately explained how money damages are an inadequate remedy. The Court, therefore, denies Whitebox's request for injunctive relief in so far as Whitebox is requesting a permanent injunction. For the reasons addressed above, the Court denies Whitebox's request for injunctive relief.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Whitebox Holdings LLC's motion for entry of default judgment against Defendants Jeffrey Parket and Robyn Parket, (Dkt. 22), is **GRANTED IN PART** and **DENIED IN PART** as addressed herein.

2. Plaintiff Whitebox Holdings LLC's motion for injunctive relief, (Dkt. 22), is **DENIED** as addressed herein.

3. The Clerk of the Court shall enter judgment as follows:

    a. $4,501,111.11 in actual damages, plus any additional interest that accrued between June 7, 2022, and the date that the Court orders entry of default judgment;

      b. $59,072.50 in attorneys' fees; and

      c. $402 in costs.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 20, 2022                             s/Wilhelmina M. Wright
                                                                                Wilhelmina M. Wright
                                                                                United States District Judge